# IN THE DISTRICT COURT OF THE UNITED STATES
## For the Western District of New York

---

**OCTOBER 2022 GRAND JURY**
**(Impaneled October 26, 2022)**

**THE UNITED STATES OF AMERICA**

*-vs-*

**INDICTMENT**
**23-CR-**

**BRYAN PATRICK LANTRY**
**SEFA DURURVURUR**

Violations:
Title 18, United States Code,
1341, 1349, 1956(h) and 2.
(32 Counts and 3 Forfeiture
Allegations)

## INDICTMENT

### The Grand Jury Charges That:

At all times relevant to this Indictment:

## INTRODUCTION

1.      The defendants, **BRYAN PATRICK LANTRY ("LANTRY")** and **SEFA DURURVURUR ("DURURVURUR")**, resided in Florida after previously residing in the Rochester, New York area.

2.      On or about May 13, 2021, **LANTRY** incorporated Safety Supply Center LLC ("Safety Supply") with an address in Boca Raton, Florida.

3.      On or about August 26, 2021, **DURURVURUR** incorporated Five Star Warehouse LLC ("Five Star Warehouse") with an address in Lauderdale Lakes, Florida.

4.      On or about September 14, 2021, **LANTRY** established Union Gloves LLC ("Union Gloves") with an address in Fort Lauderdale, Florida.   An unindicted conspirator, also a resident of Florida, was listed as Union Gloves' owner.

5.      **LANTRY** also owned Lantry Enterprise LLC with an address in Boca Raton, Florida.

6.      **DURURVURUR** also owned Wholesale Chem Supplies LLC with an address in Lauderdale Lakes, Florida.

7.      The defendants and their coconspirators used Safety Supply, Union Gloves and Five Star Warehouse to trick thousands of large companies throughout the United States into paying fraudulent invoices.

## COUNT 1
### (Conspiracy to Commit Mail Fraud)

**The Grand Jury Further Charges That:**

8.      The allegations in the Introduction and Count 32 are incorporated herein by reference.

## THE OBJECT OF THE CONSPIRACY

9.      Between in or about May 2021, and in or about July 2022, in the Western District of New York, and elsewhere, the defendants, **BRYAN PATRICK LANTRY** and **SEFA**

**DURURVURUR**, did knowingly, willfully, and unlawfully combine, conspire, and agree with others, known and unknown to the Grand Jury, to devise a scheme and artifice to defraud thousands of companies located in the United States ("the Victim Companies"), and to obtain money and property from the Victim Companies by means of false and fraudulent pretenses, representations, and promises, and for the purposes of executing such scheme and artifice to place in any post office and authorized depository for mail matter, matter and things to be sent and delivered by the Postal Service; to deposit, and cause to be deposited, matter and things to be sent and delivered by private and commercial interstate carrier; and to knowingly cause to be delivered by mail and private and commercial interstate carrier according to the direction thereon and at the place at which it was directed to be delivered by the person to whom it was addressed matter and things, in violation of Title 18, United States Code, Section 1341.

10.     The object of the conspiracy was to mass mail fraudulent invoices from the sham companies Safety Supply and Union Gloves to several thousand Victim Companies to trick the Victim Companies into paying the fraudulent invoices under the mistaken belief that the Victim Companies had previously ordered and received the personal protective equipment ("PPE") products listed on the fraudulent invoices.

## OVERVIEW OF CONSPIRACY

11.     The defendants obtained the names and addresses of primarily large companies located all over the United States to whom they could mail a document which appeared to be a legitimate invoice for PPE products that the companies would believe that they had previously ordered and received.

3

12.    The defendants targeted large companies because it was less likely during the COVID-19 pandemic that such companies' account payable departments would question whether another of the companies' departments had in fact previously ordered and received the PPE products listed on the fraudulent invoices.

13.    The defendants also targeted large companies because the relatively small amounts owed on the fraudulent invoices would be less likely to raise questions regarding the legitimacy of the fraudulent invoices.

14.    The defendants also targeted large companies because the accounts payable departments do not order products for their companies, and thus it would be less likely that the accounts payable departments would question or be suspicious of the grossly inflated prices for the PPE products listed on the fraudulent invoices.

15.    After identifying the Victim Companies, the defendants mailed from Florida the fraudulent invoices in the names of Safety Supply and Union Gloves to the several thousand Victim Companies throughout the United States.

16.    While intending that the fraudulent invoices look exactly like legitimate invoices, the defendants placed in hard-to-find places statements (a) that the documents were merely "solicitations" to order products, and (b) that there was no obligation to pay the amounts listed on the fraudulent invoices.    Such hard-to-find statements were inserted so that if the defendants were ever later questioned by any of the Victim Companies or government agencies they could falsely claim that the intended purpose of the documents was merely to "solicit" future business from the Victim Companies.    Below is an example of one

4

such document that clearly looks like a legitimate invoice, but which contains the hard-to-find "solicitation" and no obligation to pay statements.



17.     When one of the Victim Companies or a government agency inquired about the legitimacy of the invoices they received, the defendants used fictitious employee names from Safety Supply and Union Gloves to provide false statements and explanations to respond to such inquiries.   For example, the defendants would falsely state to the Victim Companies who inquired about the fraudulent invoice that some unknown employee from the Victim Companies had requested that Safety Supply or Union Gloves provide a quote (or solicitation) for PPE products, when in fact, the defendants knew that the Victim Companies never requested such quote.

18.     As a result of the conspiracy and scheme, approximately 1,338 Victim Companies were tricked into believing that they had received a legitimate invoice for PPE products that they had previously ordered and received from Safety Supply or Union Gloves.

19.     When one of the Victim Companies requested that Safety Supply or Union Gloves provide an IRS Form W-9 before a payment could be made, the defendants used fictitious employee names when communicating with the Victim Companies and when signing the Form W-9s.

20.     The Victim Companies that were tricked into believing that they had received a legitimate invoice then mailed checks or made electronic payments to Safety Supply or Union Gloves in Florida to pay the amounts owing on the fraudulent invoices.   The total amount that the Victim Companies paid Safety Supply and Union Gloves was approximately $2,197,301.75.

21.     After receiving payment from the Victim Companies, the defendants attempted to cover up their fraud by having delivered to the Victim Companies inexpensive and substandard PPE products consisting primarily of cheap cleaning supplies and safety equipment which were worth substantially less than what the Victim Companies had been charged.   For example, the defendants delivered to the Victim Companies a 100-pack of disposable gloves worth approximately $12 for which they charged the Victim Companies $390.   The defendants also on many occasions did not deliver the entire amount of PPE products listed on the fraudulent invoices.   For example, in many instances the fraudulent invoices stated that 500 disposable gloves would be shipped when in fact only 100 disposable gloves were shipped.

22.     Although the defendants attempted to cover up their fraud by having cheap PPE products delivered to the Victim Companies, the defendants made it impossible for the Victim Companies to connect and link the cheap PPE products that they received to the prior payment they had previously been tricked into making to Safety Supply and Union Gloves by the fraudulent invoices.   For example, the defendants did, among other things, the following:

a.   The products were not delivered to the Victim Companies until several weeks or months after the Victim Companies had been tricked into paying the fraudulent invoices. For example, one of the Victim Companies made its payment to Safety Supply on or about July 24, 2021, while not receiving the cheap PPE product until on or about January 13, 2022.

b.   The products when delivered did not include a copy of the document appearing to be a legitimate invoice nor any other shipping document that would have connected the products to the fraudulent invoices which the Victim Companies had paid, as is normal business practice.

c.   The products when delivered did not include any information identifying that the products had been purchased from Safety Supply or Union Gloves.

d.   The products when delivered contained fraudulent return address information on the shipping labels that contained (i) a fictitious person's name, Xi Chin, (ii) a different business name, Five Star Warehouse, and (iii) made-up phone numbers that belonged to a teenage girl in Florida and a woman in the Rochester, New York area, both of whom received numerous phone calls from various Victim Companies inquiring about the products that the Victim Companies had just received which they believed they had never ordered.   Below is an example of a shipping label with fraudulent return address information:



23.     Despite the defendants' contention that the documents they sent to the Victim Companies were not invoices but were merely "solicitations" to find new customers, the defendants, after receiving payments from the Victim Companies, who thus would have responded favorably to the documents if in fact such documents were merely "solicitations", never again attempted to contact the Victim Companies to sell additional products or to develop customer relationships, both of which would have been expected as normal business practices if in fact the Victim Companies had responded to legitimate "solicitations".

24.     The defendants never again contacted the Victim Companies to sell additional products or to develop customer relationships because any contact whatsoever would have

caused the Victim Companies to discover that they had been previously tricked and defrauded into paying what they believed were legitimate invoices and not mere "solicitations".

## MEANS BY WHICH THE OBJECT OF THE
## CONSPIRACY WAS TO BE ACCOMPLISHED

The object of the conspiracy was accomplished through the following means and methods:

### *Victim Companies Nationwide*

25. Between in or about May 2021, and in or about July 2022, the defendants had mailed from Florida to several thousand Victim Companies throughout the United States a document that the defendants intended to trick the Victim Companies into believing was a legitimate invoice from Safety Supply or Union Gloves for products that the Victim Companies had previously ordered and received.

26. Between in or about May 2021, and in or about July 2022, approximately 1,059 of the Victim Companies who received a document by mail from Safety Supply were tricked into believing that such document was a legitimate invoice which caused 1052 of such Victim Companies to subsequently mail a check to Safety Supply in Florida to pay the fraudulent invoice and 7 of such Victim Companies to make an electronic payment to Safety Supply to pay the fraudulent invoice.   The approximately 1,059 Victim Companies paid Safety Supply a total of approximately $1,916,052.25.

27. Between in or about October 2021, and in or about May 2022, approximately 279 of the Victim Companies who received a document by mail from Union Gloves were tricked into believing that such document was a legitimate invoice which caused 265 of such

Victim Companies to subsequently mail a check to Union Gloves in Florida to pay the fraudulent invoice and 14 of such Victim Companies to make an electronic payment to Safety Supply to pay the fraudulent invoice.   The approximately 279 Victim Companies paid Union Gloves a total of approximately $281,249.50.

28.    The checks received from the Victim Companies were deposited into bank accounts in the names of Safety Supply and Union Gloves and controlled by the defendants.

29.    Between in or about May 2021, and in or about July 2022, several weeks after receiving a check from the Victim Companies, the defendants caused inexpensive and substandard PPE products to be delivered to the Victim Companies with no identifying information or documentation connecting such deliveries to either Safety Supply or Union Gloves.

30.    The deliveries of the inexpensive and substandard PPE products to the Victim Companies also contained fraudulent return address information on the shipping labels which included the fictitious name "Xi Chin", the fraudulent phone numbers 561-xxx-4444 or 585-xxx-7333, and the company name Five Star Warehouse.

### _Victim Companies in Western District of New York_

31.    On or about the dates set forth below, the Victim Companies set forth below, received from Safety Supply in Florida by United States Postal Service to the town or city set forth below in the Western District of New York, what the Victim Companies believed were legitimate invoices for products that they had previously ordered and received, which caused the Victim Companies to mail checks in the amounts set forth below from the Western District

11

of New York to Safety Supply and Union Gloves in Florida on or about the dates set forth
below:

| VICTIM COMPANY | DATE OF MAILING OF INVOICE | CHECK AMOUNT TO PAY INVOICE | TOWN/CITY INVOICE MAILED TO FROM FLORIDA | DATE CHECK MAILED TO FLORIDA |
|---|---|---|---|---|
| VC 1 | 06/15/21 | $1,924.79 | Clarence Center, NY | 06/22/21 |
| VC 1 | 06/30/21 | $1,763.00 | Clarence Center, NY | 07/09/21 |
| VC 2 | 07/14/21 | $1,877.60 | Rochester, NY | 07/24/21 |
| VC 3 | 07/28/21 | $1,762.00 | West Seneca, NY | 08/13/21 |
| VC 4 | 08/03/21 | $1,764.00 | Olean, NY | 09/02/21 |
| VC 5 | 08/03/21 | $1,764.00 | Williamsville, NY | 09/08/21 |
| VC 6 | 09/01/21 | $1,778.00 | Rochester, NY | 09/10/21 |
| VC 7 | 09/01/21 | $1,778.00 | LeRoy, NY | 10/12/21 |
| VC 8 | 09/14/21 | $1,786.00 | Kenmore, NY | 11/05/21 |
| VC 9 | 09/14/21 | $1,786.00 | Scottsville, NY | 11/19/21 |
| VC 10 | 09/21/21 | $1,783.00 | Buffalo, NY | 10/08/21 |
| VC 11 | 09/28/21 | $1,781.00 | Lancaster, NY | 09/30/21 |
| VC 12 | 10/05/21 | $1,787.00 | Victor, NY | 10/18/21 |
| VC 13 | 10/12/21 | $1,789.00 | Rochester, NY | 11/05/21 |
| VC 14 | 10/26/21 | $ 978.00 | Rochester, NY | 11/04/21 |

**All in violation of Title 18, United States Code, Section 1349.**

## COUNTS 2-16
### (Mail Fraud)

### The Grand Jury Further Charges That:

32.     The allegations in the Introduction and in Counts 1 and 32 are incorporated herein by reference.

33.     Between in or about May 2021, and in or about July 2022, in the Western District of New York, and elsewhere, the defendants, **BRYAN PATRICK LANTRY** and **SEFA DURURVURUR**, did devise, and intend to devise, a scheme and artifice to defraud the Victim Companies, and to obtain money and property from the Victim Companies by means of false and fraudulent pretenses, representations, and promises.

34.     On or about the dates set forth below, the defendants, for the purpose of executing, and attempting to execute, the scheme and artifice, placed in any post office and authorized depository fraudulent invoices in the amounts set forth below, which were mail matter to be sent and delivered by the Postal Service; deposited and caused to be deposited, checks to pay the fraudulent invoices, to be sent and delivered by private and commercial interstate carrier; and knowingly caused the fraudulent invoices and checks to be delivered by mail and private and commercial interstate carrier according to the direction thereon and at the place at which it was directed to be delivered by the person to whom it was addressed, the matters set forth below:

| COUNT | VICTIM COMPANY | DATE INVOICE MAILED AND AMOUNT | TOWN/CITY INVOICE MAILED TO FROM FLORIDA | DATE CHECK MAILED FROM WDNY TO FLORIDA |
|---|---|---|---|---|
| 2 | VC 1 | 06/15/21 $1,924.79 | Clarence Center, NY | 06/22/21 |
| 3 | VC 1 | 06/30/21 $1,763.00 | Clarence Center, NY | 07/09/21 |
| 4 | VC 2 | 07/14/21 $1,877.60 | Rochester, NY | 07/24/21 |
| 5 | VC 3 | 07/28/21 $1,762.00 | West Seneca, NY | 08/13/21 |
| 6 | VC 4 | 08/03/21 $1,764.00 | Olean, NY | 09/02/21 |
| 7 | VC 5 | 08/03/21 $1,764.00 | Williamsville, NY | 09/08/21 |
| 8 | VC 6 | 09/01/21 $1,778.00 | Rochester, NY | 09/10/21 |
| 9 | VC 7 | 09/01/21 $1,778.00 | LeRoy, NY | 10/12/21 |
| 10 | VC 8 | 09/14/21 $1,786.00 | Kenmore, NY | 11/05/21 |
| 11 | VC 9 | 09/14/21 $1,786.00 | Scottsville, NY | 11/19/21 |
| 12 | VC 10 | 09/21/21 $1,783.00 | Buffalo, NY | 10/08/21 |

| 13 | VC 11 | 09/28/21<br>$1,781.00 | Lancaster, NY | 09/30/21 |
| 14 | VC 12 | 10/05/21<br>$1,787.00 | Victor, NY | 10/18/21 |
| 15 | VC 13 | 10/12/21<br>$1,789.00 | Rochester, NY | 11/05/21 |
| 16 | VC 14 | 10/26/21<br>$978.00 | Rochester, NY | 11/04/21 |

**All in violation of Title 18, United States Code, Sections 1341 and 2.**

## COUNTS 17-31
### (Mail Fraud)

**The Grand Jury Further Charges That:**

35.     The allegations in the Introduction and in Counts 1 through 16 and Count 32 are incorporated herein by reference.

36.     Between in or about May 2021, and in or about July 2022, in the Western District of New York, and elsewhere, the defendants, **BRYAN PATRICK LANTRY a**nd **SEFA DURURVURUR**, did devise, and intend to devise, a scheme and artifice to defraud the Victim Companies, and to obtain money and property from the Victim Companies by means of false and fraudulent pretenses, representations, and promises.

37.     On or about the dates set forth below, the defendants, for the purpose of executing, and attempting to execute, the scheme and artifice, placed in any post office and authorized depository mail matter to be sent and delivered by the Postal Service; deposited

and caused to be deposited, to be sent and delivered by private and commercial interstate carrier; and knowingly caused to be delivered by mail and private and commercial interstate carrier according to the direction thereon and at the place at which it was directed to be delivered by the person to whom it was addressed, the matters set forth below:

| COUNT | VICTIM COMPANY | DATE PRODUCTS MAILED/SHIPPED TO VICTIM COMPANIES | PLACE PRODUCTS MAILED/SHIPPED TO IN WDNY |
|---|---|---|---|
| 17 | VC 1 | 08/31/2021 | Clarence Center, NY |
| 18 | VC 1 | 09/01/2021 | Clarence Center, NY |
| 19 | VC 2 | 01/12/2022 | Rochester, NY |
| 20 | VC 3 | 08/25/2021 | West Seneca, NY |
| 21 | VC 4 | 10/28/2021 | Olean, NY |
| 22 | VC 5 | 11/11/2021 | Williamsville, NY |
| 23 | VC 6 | 11/09/2021 | Rochester, NY |
| 24 | VC 7 | 12/09/2021 | LeRoy, NY |
| 25 | VC 8 | 01/26/2022 | Kenmore, NY |
| 26 | VC 9 | 12/09/2021 | Scottsville, NY |
| 27 | VC 10 | 01/26/2022 | Buffalo, NY |
| 28 | VC 11 | 01/26/2022 | Lancaster, NY |

| 29 | VC 12 | 12/09/2021 | Victor, NY |
| 30 | VC 13 | 12/15/2021 | Rochester, NY |
| 31 | VC 14 | 12/20/21 | Rochester, NY |

**All in violation of Title 18, United States Code, Sections 1341 and 2.**

## COUNT 32

**(Conspiracy to Engage in Money Laundering)**

**The Grand Jury Further Charges That:**

38.     The allegations in the Introduction and Counts 1 through 31 are incorporated herein by reference.

## THE OBJECT OF THE CONSPIRACY

39.     Between in or about May 2021, and in or about July 2022, in the Western District of New York, and elsewhere, the defendants, **BRYAN PATRICK LANTRY** and **SEFA DURURVURUR**, did knowingly, willfully and unlawfully combine, conspire and agree together and with each other, and with other persons both known and unknown to the Grand Jury:

(a) to knowingly engage in monetary transactions, affecting interstate commerce, in criminally derived property of a value greater than $10,000, that is, the deposit, withdrawal, transfer and exchange of funds and monetary instruments by, through and to financial institutions engaged in and the activities of which affected interstate and foreign commerce, such property having been derived from specified unlawful activity, that is, mail fraud, in violation of Title 18, United States Code, Section 1341, and knowing that the funds and monetary instruments involved in the transactions constituted, and were derived from, proceeds obtained from a criminal offense, in violation of Title 18, United States Code, Sections 1957 and 2; and

17

(b) to knowingly conduct financial transactions affecting interstate commerce, that is, the deposit, withdrawal, transfer and exchange of funds and monetary instruments by, through and to financial institutions engaged in and the activities of which affected interstate and foreign commerce, which represented the proceeds of a specified unlawful activity, that is, mail fraud, in violation of Title 18, United States Code, Section 1341, with (i) the intent to promote the carrying on of specified unlawful activity, and (ii) knowing that the transactions were designed in whole or in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of specified unlawful activity, and that while conducting such financial transactions knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i), 1956(a)(1)(B)(i) and 2.

## MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE ACCOMPLISHED

The object of the conspiracy was accomplished through the following means and methods:

40.     Between in or about May 2021, and in or about July 2022, Safety Supply received from approximately 1,059 Victim Companies a total of approximately $1,916,052.25, which was deposited into bank accounts belonging to Safety Supply, and which represented criminally derived property and proceeds of specified unlawful activity.

41.     Between in or about October 2021, and in or about May 2022, Union Gloves received from approximately 279 Victim Companies a total of approximately $281,249.50, which was deposited into bank accounts belonging to Union Gloves, and which represented criminally derived property and proceeds of specified unlawful activity.

42.     Between in or about May 2021, and in or about July 2022, the money deposited into Safety Supply's and Union Gloves' bank accounts, which represented criminally derived property and proceeds of specified unlawful activity, was transferred from such bank

accounts, causing monetary transactions of more than $10,000, to (a) the bank accounts belonging to other corporations owned by the defendants, (b) other conspirators' bank accounts, and (c) the defendants in cash or by Cashier Checks.

43.     Between in or about May 2021, and in or about July 2022, the money deposited into Safety Supply and Union Gloves bank accounts, which represented proceeds from specified unlawful activity, was transferred from such bank accounts to purchase United States Postal stamps and to pay United Parcel Service to ship the cheap PPE product , which were financial transactions made with the intent to promote the carrying on of specified unlawful activity, that is, mail fraud.

## ACTS IN FURTHERANCE OF THE CONSPIRACY

44.     On or about the dates set forth below, the defendants caused monetary transactions involving criminally derived property with a value greater than $10,000, that is, the withdrawal of funds in the approximate amounts set forth below from bank accounts in the name of Safety Supply at JP Morgan Chase, Wells Fargo Bank and SunTrust Bank, and in the name of Union Gloves at Wells Fargo Bank, and the deposit of such funds into Bank of America account number ending in 7724 in the name of Lantry Enterprise LLC:

| DATE | AMOUNT |
|---|---|
| 08/27/2021 | $ 10,700 |
| 09/16/2021 | $ 10,645 |
| 09/30/2021 | $ 11,000 |
| 09/30/2021 | $ 34,000 |
| 10/08/2021 | $ 11,200 |
| 10/14/2021 | $ 40,000 |
| 10/26/2021 | $ 10,800 |
| 11/01/2021 | $ 30,000 |

| | |
|---|---|
| 11/05/2021 | $ 14,800 |

45.     On or about December 13, 2021, the defendants caused monetary transactions involving criminally derived property with a value greater than $10,000, that is, the withdrawal of funds in the approximate amount of $45,000 from a bank account in the name of Union Gloves at Wells Fargo Bank, to purchase Cashier Checks payable to **LANTRY** in the amount of $45,000.

46.     On or about the dates set forth below, the defendants caused monetary transactions involving criminally derived property with a value greater than $10,000, that is, the withdrawal of funds in the approximate amounts set forth below from bank accounts in the name of Safety Supply at JP Morgan Chase, Wells Fargo Bank and SunTrust Bank, and in the name of Union Gloves at Wells Fargo Bank, and the deposit of such funds into Bank of America account number ending in 1230 in the name of Five Star Warehouse:

| DATE | AMOUNT |
|---|---|
| 10/26/2021 | $ 45,000.00 |
| 11/05/2021 | $100,192.45 |
| 11/05/2021 | $80,326.11 |
| 11/12/2021 | $ 45,215.05 |
| 12/10/2021 | $ 30,000.00 |

47.     On or about November 19, 2021, the defendants caused a monetary transaction involving criminally derived property with a value greater than $10,000, that is, the withdrawal of funds in the amount of $20,000 from a bank account in the name of Safety Supply at Wells Fargo Bank, and the deposit of such funds into Bank of America account number ending in 1243 in the name of Wholesale Chem Supplies LLC.

48.     On or about the dates set forth below, the defendants caused monetary transactions involving criminally derived property with a value greater than $10,000, that is, the cash withdrawal of funds in the approximate amounts set forth below from bank accounts in the name of Safety Supply at JP Morgan Chase, Wells Fargo Bank and SunTrust Bank, and in the name of Union Gloves at Wells Fargo Bank:

| DATE | AMOUNT |
|---|---|
| 12/09/2021 | $ 15,000 |
| 12/09/2021 | $ 40,000 |
| 12/10/2021 | $ 20,000 |
| 04/01/2022 | $ 25,000 |
| 04/14/2022 | $ 30,000 |

49.     On or about December 10, 2021, **LANTRY** caused a monetary transaction involving criminally derived property with a value greater than $10,000, that is, the withdrawal of cash in the amount of $20,000 from a bank account in the name of Union Gloves at Wells Fargo Bank.

50.     Between in or about May 2021, and in or about July 2022, for purposes of promoting the carrying on of specified unlawful activity, and knowing that the transactions were designed in whole or in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of specified unlawful activity, caused financial transactions with proceeds of specified unlawful activity, that is, the cash withdrawal of funds in the approximate amounts set forth below from bank accounts in the names of Safety Supply and Union Gloves:

| DATE | AMOUNT |
|------|--------|
| 12/09/2021 | $ 15,000 |
| 12/09/2021 | $ 40,000 |
| 12/10/2021 | $ 20,000 |
| 04/01/2022 | $ 25,000 |
| 04/14/2022 | $ 30,000 |

51.      On or about December 10, 2021, for purposes of promoting the carrying on of specified unlawful activity, and knowing that the transactions were designed in whole or in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of specified unlawful activity, caused a financial transaction with proceeds of specified unlawful activity, that is, the cash withdrawal of in the amount of $20,000 from a bank accounts in the name of Union Gloves at Wells Fargo Bank.

52.      Between in or about May 2021, and in or about July 2022, for purposes of promoting the carrying on of specified unlawful activity, caused financial transactions with proceeds of specified unlawful activity, that is, the withdrawal of approximately $24,658.58 from bank accounts belonging to Safety Supply and Union Gloves to pay the United States Postal Service for stamps required to mail out fraudulent documents appearing to be a legitimate invoice to the Victim Companies.

53.      Between in or about May 2021, and in or about July 2022, for purposes of promoting the carrying on of specified unlawful activity, caused financial transactions with proceeds of specified unlawful activity, that is, the withdrawal of approximately $116,109.69 from bank accounts belonging to Safety Supply, Union Gloves, Five Star Warehouse, and

Wholesale Chem Supplies LLC to pay United Parcel Service to ship the cheap products to the Victim Companies.

**All in violation of Title 18, United States Code, Section 1956(h).**

## FIRST FORFEITURE ALLEGATION
**(Proceeds Forfeiture)**

**The Grand Jury Alleges That:**

Upon conviction of any and all of the offenses set forth in Counts 1 through 31 of this Indictment, the defendant, **BRYAN PATRICK LANTRY**, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, constituting, or derived from, proceeds the defendant obtained directly or indirectly, as the result of such violation. The property to be forfeited includes, but is not limited to, the following:

## A. MONETARY SUM

The approximate sum of $537,988.04 United States currency, which sum of money is equal to the total amount of proceeds obtained as a result of the offenses for which the defendant, **BRYAN PATRICK LANTRY,** is charged in Counts 1 through 31.   In the event that the above sum is not available, then a money judgment for the same amount will be entered against the defendant.

If any of the property described above, as a result of any act or omission of the defendant:

      i.    cannot be located upon the exercise of due diligence;

      ii.   has been transferred or sold to, or deposited with, a third person;

23

iii.   has been placed beyond the jurisdiction of the Court;

iv.   has been substantially diminished in value; or

v.   has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

**All pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 28, United States Code, Section 2461(c) and Title 21, United States Code, Section 853(p).**

## SECOND FORFEITURE ALLEGATION
### (Proceeds Forfeiture)

**The Grand Jury Further Alleges That:**

Upon conviction of any and all of the offenses set forth in Counts 1 through 31 of this Indictment, the defendant, **SEFA DURURVURUR**, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, constituting, or derived from, proceeds the defendant obtained directly or indirectly, as the result of such violation. The property to be forfeited includes, but is not limited to, the following:

### B. MONETARY SUM

The approximate sum of $98,578.36 United States currency, which sum of money is equal to the total amount of proceeds obtained as a result of the offenses for which the defendant, **SEFA DURURVURUR,** is charged in Counts 1 through 31.   In the event that the

above sum is not available, then a money judgment for the same amount will be entered against the defendant.

If any of the property described above, as a result of any act or omission of the defendant:

> vi.   cannot be located upon the exercise of due diligence;

> vii.  has been transferred or sold to, or deposited with, a third person;

> viii. has been placed beyond the jurisdiction of the Court;

> ix.   has been substantially diminished in value; or

> x.    has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

**All pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 28, United States Code, Section 2461(c) and Title 21, United States Code, Section 853(p).**

## <u>THIRD FORFEITURE ALLEGATION</u>
### (Money Laundering Forfeiture)

**The Grand Jury Further Alleges That:**

Upon conviction of the offense set forth in Count 32 of this Indictment, the defendants, **BRYAN PATRICK LANTRY** and **SEFA DURURVURUR**, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), the following property:

A.        **PROPERTY**

All right, title and interest in any and all property involved in a violation of Title 18, United States Code, Section 1956(h) for which the defendant is convicted, and all property traceable to such property, including the following: (1) all money or other property that was the subject of each transaction, transmission or transfer in violation of Section 1956 and 1957, or any money or property traceable to such money or property; (2) all commissions, fees and other property constituting proceeds obtained as a result of said violation; and (3) any property, real or personal, involved in such offense, or any property traceable to such property.

B.        **MONETARY AMOUNT**

The sum of approximately $636,566.40 United States currency, which sum of money is equal to the total amount of money involved in the money laundering offense for which the defendants, **BRYAN PATRICK LANTRY** and **SEFA DURURVURUR** is charged.  In the event that the above sum is not available, then a money judgment for the same amount will be entered against the defendants.

If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendants

1.        cannot be located upon the exercise of due diligence;
2.        has been transferred or sold to, or deposited with, a third person;
3.        has been placed beyond the jurisdiction of the Court;
4.        has been substantially diminished in value; or
5.        has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to

Title 21, United States Code, Section 853(p).

**All pursuant to Title 18, United States Code, Section 982(a)(1), and Title 21, United States Code, Section 853(p).**

DATED:   Rochester, New York, September 19, 2023

TRINI E. ROSS
United States Attorney

By:       s/RICHARD A. RESNICK
Assistant United States Attorney
United States Attorney's Office
Western District of New York
100 State Street, Suite 500
Rochester, New York 14614
(585) 263-6760
Richard.Resnick@usdoj.gov

A TRUE BILL:

s/FOREPERSON